**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**EAGLE PROPERTIES, et al., Defendants.**

Misc. Nos. 84–0297, 84–0298.

United States District Court, District of Columbia.

Nov. 28, 1984.

Larry S. Gondelman, Washington, D.C., for Eagle Properties, Ltd., Thomas C. Brown, M.W. Branum, Clint Hurt, Gene Sledge, and Charles Perry; Hundley & Cacheris, Washington, D.C., Oppenheimer, Rosenberg, Kellèher & Wheatley, Inc., Seagal V. Wheatley, Leo O. Bacher, Jr., San Antonio, Tex., of counsel.

Dewey R. Hicks, Jr., Brice & Barron, Dallas, Tex., for defendants J.L. Davis and Carl Lawrence.

Frank Bonaventure, Litigation Div., Comptroller of the Currency, George P. Williams, Asst. U.S. Atty., District of Columbia, Dept. of Justice, Washington, D.C., for the U.S.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court are two motions to compel discovery filed by the defendants in the above-captioned case. Movants seek to have two non-party governmental agencies, the Office of the Comptroller of the Currency ("OCC") and the Securities and Exchange Commission ("SEC") each provide a named agent for deposition and also certain documents named in two subpoenas *duces tecum* issued by the Clerk of this Court. For the reasons set forth below, the Court grants the motion to compel as to OCC, with specific limitations, and denies the motion as to the SEC.

The underlying action from which stem these two motions lies in the United States District Court for the Western District of Texas, Midland Division. Plaintiff Federal Deposit Insurance Corporation ("FDIC") brought suit to collect on $25 million in notes given by the defendants to the First National Bank of Midland as part of the consideration for the sale and leaseback of the building on December 31, 1982. The FDIC acquired the notes upon the closing of the FNB-Midland on October 14, 1983, and instituted the underlying action to collect on them. The defendant/movants counterclaimed alleging, among other things, that the notes are neither due nor payable under the terms of a subordination clause in the agreement, and that they were defrauded into entering into the sale/leaseback transaction by the misrepresentations of then FNB-Midland's President, Charles Fraser, as to the value of the building and the financial condition of the bank.

In an effort to show that the FDIC had actual knowledge of the alleged fraud at the time it took the notes, a burden essential to the successful outcome of the fraud counterclaim, *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), defendant/movants had the Clerk of this Court issue two foreign subpoenas *duces tecum*. One was directed at the OCC and directed that office to produce for deposition Robert V. Ahrens, Director of Special Projects, and also directed the OCC to produce certain documents in conjunction therewith. The second subpoena *duces tecum* was directed at the SEC and directed that office to produce James Mann, Attorney and Branch Chief for the Division of Enforcement of the SEC for a deposition, and again to provide certain documents. As the OCC has correctly noted, even if this could be properly characterized as an eleventh hour discovery request, as the OCC feels it should be, the Court should not deny the motion out of hand. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C.Cir.1984). That case, like this one, involved imminent discovery cut-off dates of a foreign court. Here, the parties face a December 12, 1984, deadline on all discovery and a trial date of January 21, 1985. Unlike the documents at issue in *Friedman*, however, there exists here a strong threshold question of relevance. The subpoena directed OCC to turn over all of its records regarding the OCC's supervision of FNB-Midland over the past three years. According to the affidavit submitted by the OCC, that file is approximately 28 feet in length.

The OCC objects to the request on the grounds that it is over-burdensome to expect the agency to go through such a large file in an effort to determine which documents are privileged and which may be released. OCC contends, and the Court agrees, that most of the file has no relevance to the case at hand. The action here centers around the sale/leaseback transaction itself, and the scope of discovery should be, therefore, limited to only those documents directly related to the transac-

tion at issue. To grant the movant's motion in full would create another long delay in what is apparently already a protracted litigation. However, the Court feels that the defendant/movants have a right to view any and all documents directly relating to the sale/leaseback transaction which are not protected by privilege. Therefore, the Court will grant the motion to that extent and subject those limitations.

The motion to compel discovery from the SEC is an entirely different matter. From the beginning, the SEC has cooperated with the requests of the defendant/movants. The subpoena called for the production of virtually every document generated by an SEC investigation into FNB-Midland. This investigation involved numerous communications between SEC and OCC staff attorneys. The investigation led to an action for injunctive relief against FNB-Midland's former President, Charles D. Fraser, and a subsequent consent decree was entered into.

On September 28, 1984, the SEC produced nearly eight feet of documents and transcripts, almost the entire investigatory file. In addition, James G. Mann appeared for deposition and testified for two days and Susan Swanser, an SEC accountant, testified for a half day. Mr. Mann, on the advice of Commission Counsel, testified as to the circumstances surrounding communications between SEC and OCC staff, but declined to testify as to the substance of those communications, invoking the deliberative process privilege and the work-product doctrine. In addition, the SEC withheld four documents on the same grounds. It is this remaining information which the defendant/movants seek in the present motion. The Court, however, finds for the agency and denies the motion.

■ The deliberative process privilege protects from disclosure those communications within the federal government which consist of advice, recommendations, opinions, and other information transfers involved in the deliberative processes of governmental agencies. *Murphy v. Department of the Army*, 613 F.2d 1151, 1154 (D.C.Cir.1979); *Brinton v. Department of State*, 636 F.2d 600 (D.C.Cir.1980); *McClelland v. Andrus*, 606 F.2d 1278, 1287–88 (D.C.Cir.1979). For the privilege to apply, the communication or document must have been predecisional and must have been deliberative in that it was actually related to the decision making process. *Kansas State Network, Inc. v. FCCJ*, 720 F.2d 185, 191 (D.C.Cir.1983); *Jordan v. Department of Justice*, 591 F.2d 753, 772–79 (D.C.Cir. 1978) (*en banc*). The communications at issue here meet these tests.

■ The information sought comes from communications between SEC and OCC staff which took place during the course of the two agencies' investigations concerning FNB-Midland. These communications concerned litigation strategy generally, and such specific topics as what issues were raised in the case, what witnesses to call for deposition, and what questions should be asked. Most notably, the communications involved staff discussions of the preparation and filing of the action against Charles D. Fraser and the allegations to be made in the complaint. The four documents the SEC seeks to protect consist of notes of these inter-staff discussions and summaries of the issues of the SEC staff considered most important to investigate.

These communications and documents are clearly protected by the deliberative process privilege. First, they are predecisional in that they all relate to, and precede, the final decision to file an action against Charles Fraser. Further, they are clearly deliberative in that they were an integral part of the formulation of decisions throughout the investigations and the eventual filing of the lawsuit.

■ These communications and documents are also clearly protected by the work-product doctrine, which "shelters the mental processes of the attorney, prodding a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *Hick-*

*man v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). This doctrine has been codified in Fed.R.Civ.P. 26.

As noted above, these communications and documents concerned the litigation strategy and procedure of the lawsuit as well as recommendations regarding the direction to be taken in the investigations. Discovery of these materials would invade the thought processes of the SEC and OCC attorneys, an outcome which the work-product doctrine was designed to prevent.

■ In order to obtain these materials, the defendant/movants must show a substantial need. Fed.R.Civ.P. 26; *Hickman v. Taylor*, 329 U.S. at 512, 67 S.Ct. at 394. The Court finds that defendant/movants have failed to meet this burden. This is especially true in light of the Court's limitation on the scope of discovery pertaining to the OCC subpoena. Movants seek to discover if FDIC knew about the alleged fraud prior to taking the notes. As part of this theory, movants have asked for a broad range of documents hoping to find proof of FDIC knowledge. The Court has already stated its objection to allowing such a widespread fishing expedition. Movants then go even further and state they need the SEC material to attempt to find the proof they seek. This is simply going too far. Not only are the SEC materials privileged, but the Court cannot see any way in which they could be relevant to the sale/leaseback transaction at issue in this case. For these reasons, the Court will deny the motion as to SEC.

Therefore, it is by the Court, this 28th day of November, 1984, hereby

ORDERED: that the motion to compel discovery from the Office of the Comptroller of the Currency be, and the same hereby is, granted, subject to the limitations set forth above; and it is

FURTHER ORDERED that the motion to compel discovery from the Securities and Exchange Commission be, and the same hereby is, denied.